UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VENIAS JORDAN, JR.,

    Plaintiff,

v.

VERYNDA STROUGHTER, ET AL.,

    Defendants.
_____/

Case No. 18-cv-13024

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
R. STEVEN WHALEN

**OPINION AND ORDER DENYING PLAINTIFF'S AMENDED MOTION FOR PRELIMINARY INJUNCTION [#10]**

**I. INTRODUCTION**

Plaintiff Venias Jordan, Jr. initiated this action against Defendants on September 26, 2018 alleging several civil rights claims under 42 U.S.C. § 1983. Dkt. No. 1. On September 27, 2018, Plaintiff filed an Emergency Motion for Preliminary Injunction. Dkt. No. 2. Plaintiff amended that Motion on September 28, 2018. Dkt. No. 10.

Present before the Court is Plaintiff's Amended Motion for Preliminary Injunction [#10]. A Hearing on the Motion was held on October 19, 2018. For the reasons stated on the record and discussed below, the Court will DENY Plaintiff's Motion [#10].

## II. BACKGROUND

Plaintiff is currently employed by Defendant Detroit Public Schools Community District ("Defendant DPSCD") as an Attendance Agent. Dkt. No. 14, p. 10 (Pg. ID 227). He was hired into this position on August 25, 2018. *Id.* at p. 13 (Pg. ID 230). Prior to that, Plaintiff worked for Defendant DPSCD as a probationary teacher. *Id.* He began that job on January 8, 2018. *Id.*

For the past five years, Plaintiff has served as the head boys basketball coach at Detroit Renaissance High School. Dkt. No. 10, p. 5 (Pg. ID 108). For most of those years, Plaintiff was considered an independent contractor, as he was not an employee of Defendant DPSCD. Dkt. No. 14, p. 13 (Pg. ID 230). However, when he was hired as a probationary teacher on January 8, 2018, Defendants assert that Plaintiff's role as basketball coach became governed by the teacher union's collective bargaining agreement. *Id.* at p. 11 (Pg. ID 228). Defendants claim that under the terms of the collective bargaining agreement, the role of coach is a supplemental assignment to an employee's full-time duties, which can be given or taken away at the District's discretion. *Id.* at pp. 11, 18 (Pg. ID 228, 235).

When Plaintiff was first brought on as the head boys basketball coach of Detroit Renaissance High School in June 2013, Anita Williams was the Principal. Dkt. No. 10, p. 6 (Pg. ID 109). Plaintiff claims he had a binding oral contract with Principal Williams that named him as coach of the basketball team, and that each

year since 2013, Williams orally renewed this contract. *Id.* According to Plaintiff, this occurred most recently in June 2018. *Id.* at p. 7 (Pg. ID 110).

In July 2018, Anita Williams resigned from her position as Principal, and Roy Harris filled the role as interim Principal. *Id.* at pp. 7-8 (Pg. ID 110-11). In August 2018, Plaintiff claims that interim Principal Harris verbally reaffirmed that Plaintiff would remain the head coach for the upcoming 2018-2019 season. *Id.* at p. 8 (Pg. ID 111).

On September 4, 2018, Defendant Verynda Stroughter took over as Principal at Detroit Renaissance High School. *Id.* at p. 9 (Pg. ID 112). After being hired, Defendant Stroughter decided to relieve Plaintiff of his duties as head boys basketball coach. *Id.* at pp. 9-10 (Pg. ID 112-13). This took place on September 11, 2018. *Id.* Defendant Stroughter maintains that she made this decision, in part, because she had learned of some inappropriate behavior by Plaintiff. Dkt. No. 14-7. Plaintiff contends he was released from his position so Defendant Stroughter could hire her alleged romantic partner and former Detroit Renaissance High School basketball coach, Mark White. Dkt. No. 10, p. 10-11 (Pg. ID 113-14). In any case, Defendant Stroughter conducted interviews for the open position and allowed Plaintiff to reapply. *Id.* at p. 10 (Pg. ID 114).

Plaintiff scheduled an interview with Defendant Stroughter for September 24, 2018. *Id.* at p. 11 (Pg. ID 42). However, in the days leading up to the

interview, Plaintiff asserts that Mark White contacted him to let him know that Defendant Stroughter had already offered White the job. *Id.* at pp. 11-12 (Pg. ID 114-15). Upon learning this, Plaintiff retained an attorney. *Id.* at p. 12, (Pg. ID 115). When Plaintiff arrived for his interview with Defendant Stroughter, Plaintiff brought an email from his attorney threatening litigation. Dkt. No. 14, p. 14 (Pg. ID 231). Plaintiff claims that during the interview, Defendant Stroughter seemed disinterested in rehiring Plaintiff as head coach. Dkt. No. 10, p. 13 (Pg. ID 116). Hence, following the interview, Plaintiff contacted his attorney and members of the media to publicly criticize Defendant Stroughter. *Id.* On September 25, 2018, Detroit News released an article detailing Plaintiff's comments. *Id.* at p. 14 (Pg. ID 117).

Notably, Mark White was never hired as head coach at Detroit Renaissance High School. *Id.* He withdrew from consideration after allegations surfaced about him having sexual relationships with female high school students. *Id.* at pp. 13-14 (Pg. ID 116-17-45). Instead, John White was selected to serve as interim head coach on October 1, 2018. Dkt. No. 14, p. 14 (Pg. ID 231).

Plaintiff maintains that he was unlawfully terminated from his position as head coach. Dkt. No. 10, p. 2 (Pg. 105). Thus, Plaintiff now asks this Court to issue a preliminary injunction enjoining Defendants from enforcing Defendant Stroughter's decision to terminate him as head coach at Detroit Renaissance High

School and enjoining Defendants from interviewing other candidates to fill the position. *Id.* at p. 30 (Pg. ID 133).

### III. LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). Whether to grant such relief is a matter within the discretion of the district court. *N.A.A.C.P. v. City of Mansfield, Ohio*, 866 F.2d 162, 166 (6th Cir. 1989).

Courts will consider four factors in determining whether to grant a request for a preliminary injunction. Those factors are "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001).

None of the factors the court considers, standing alone, is a prerequisite to relief; rather, the court should balance them. *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 653 (6th Cir. 1996). But "a finding that there is simply no likelihood of

success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs.*, 225 F.3d 620, 625 (6th Cir. 2000).

## IV. DISCUSSION

### A. Plaintiff has not Demonstrated a Likelihood of Success on the Merits of his Claims.

1. <u>Because Plaintiff has not demonstrated that he has a property interest in his assignment as head coach, Defendants were not required to provide Plaintiff with a pre- or post-termination hearing.</u>

Plaintiff argues that Defendants violated his Fourteenth Amendment procedural due process rights by firing him without cause and without a pre- or post-termination hearing. Dkt. No. 10, pp. 5, 17 (Pg. ID 108, 120). Defendants argue that Plaintiff has no property interest in the coaching position because it was simply an "assignment" that was supplemental to Plaintiff's job as an Attendance Agent. Dkt. No. 14, p. 18 (Pg. ID 235). As such, Defendants assert that the "assignment" was governed by the teacher union's collective bargaining agreement, which allows these roles to be given or taken away at the District's discretion. *Id.* During oral argument, Plaintiff maintained that the collective bargaining agreement has no application to athletic coaches. At this time, the Court need not determine the scope and applicability of the collective bargaining agreement because Plaintiff has not met his burden of demonstrating that the coaching job was anything more than an at-will position.

The Sixth Circuit is clear, if an employee has a property interest in continued employment, then they must be afforded due process before being discharged. *Pucci v. Nineteenth Dist. Court*, 628 F.3d 752, 765 (6th Cir. 2010). Hence, a due process claim brought by a terminated employee requires two inquiries: (1) whether the employee had a property interest that entitled them to due process protection, and if so, (2) the level of process that was due. *Id.*

"Michigan law generally presumes that employment relationships are 'at-will' arrangements; at-will employees, in turn, have no property interest in their continued employment." *Id.* at 766. But a party can overcome this presumption in one of three ways:

> (1) Proof of a contractual provision for a definite term of employment or a provision forbidding discharge absent just cause; (2) an express agreement, either written or oral, regarding job security that is clear and unequivocal; or (3) a contractual provision, implied at law, where an employer's policies and procedures instill a legitimate expectation of job security in the employee.

*Id.*

Here, Plaintiff asserts that he was more than an at-till employee because the verbal agreements he made with former principal Anita Williams in June 2018 and interim Principal Harris in August 2018 constitute clear and unequivocal express agreements of job security. Dkt. No. 10, p. 16 (Pg. ID 119). However, Plaintiff provides no evidence of what was said during his conversations with Williams and Harris. Instead, Plaintiff presents an affidavit from Williams stating that it was her "understanding that the yearly oral contracts that principals were authorized to

enter into with athletic coaches could not be terminated without just cause." Dkt. No. 12, p. 3 (Pg. ID 159). But this statement will not suffice. First, it provides no basis for Williams' understanding. *See id.* And second, Williams does not assert that she expressed this understanding to Plaintiff when she orally renewed his coaching contract. *See id.*; *Pucci*, 628 F.3d at 766 (requiring an *express agreement*, either written or oral, regarding job security that is *clear and unequivocal*).

In short, just because Plaintiff has been retained as head coach in the past does not make him more than an at-will employee. In fact, that Plaintiff's oral contract needed reapproval each year cuts against a legitimate expectation of job security. Hence, Plaintiff has not satisfied his burden of establishing a property interest in his continued employment as head boys basketball coach. Consequently, Plaintiff was not entitled to due process before or after he was relieved of his duties.

2. <u>Plaintiff cannot assert a class-of-one theory of liability in the public employment context.</u>

Plaintiff next argues that Defendants violated his Fourteenth Amendment equal protection rights by subjecting him to a biased interview process. Dkt. No. 10, p. 18 (Pg. ID 121). Specifically, Plaintiff argues he was treated differently than

all other coaching candidates. *Id.* at p. 20, (Pg. ID 123). Plaintiff bases his claim on the "class-of-one" theory. *Id.* at p. 19 (Pg. ID 122).

"The Equal Protection Clause prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *TriHealth, Inc. v. Board of Com'rs, Hamilton Cty., Ohio*, 430 F.3d 783, 788 (6th Cir. 2005). "A 'class of one' plaintiff may demonstrate that government action lacks a rational basis either by negativing every conceivable basis which might support the government action, or by showing that the challenged action was motivated by animus or ill-will." *Id.* However, the Supreme Court has emphasized, "the class-of-one theory of equal protection does not apply in the public employment context." *Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591, 598 (2008). Indeed, "To treat employees differently is not to classify them in a way that raises equal protection concerns. Rather, it is simply to exercise the broad discretion that typically characterizes the employer-employee relationship." *Id.* at 605.

Here, Plaintiff is a public employee asserting a class-of-one theory of liability against his public employer. *See* Dkt. No. 10, p. 18 (Pg. ID 121). Because public employers enjoy broad discretion in the public employment context, Plaintiff's class-of-one claim must necessarily fail. *See Engquist*, 553 U.S. at 598,

605. Therefore, Plaintiff has not shown that he has a likelihood of success on the merits of his Fourteenth Amendment equal protection claim.

   3. <u>Plaintiff fails to demonstrate that Defendants retaliated against him for exercising his First Amendment rights.</u>

Plaintiff finally argues that Defendants are refusing to consider him for the head coaching job because Plaintiff (1) publicly criticized Defendant Stroughter in the media, (2) hired an attorney, and (3) filed this lawsuit. Dkt. No. 10, pp. 21-23 (Pg. ID 124-26). However, Plaintiff's evidence in support of these broad accusations is lacking.

"To state a claim for relief under § 1983 for a First Amendment retaliation claim, a plaintiff must show that: (1) the plaintiff engaged in protected conduct; (2) adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two." *King v. Zamiara*, 680 F.3d 686, 694 (6th Cir. 2012). With respect to this third element, the plaintiff must show that "the adverse action was motivated at least in part by the plaintiff's protected conduct." *Id.* If a plaintiff establishes the three elements of a First Amendment retaliation claim, then the burden shifts to the defendant to show, by a preponderance of the evidence, that it would have reached the same decision even in the absence of the protected conduct. *Id.*

Here, even assuming that Plaintiff was engaging in constitutionally protected conduct, Plaintiff has not established that Defendants' decision to terminate his coaching duties, and not bring him back, was motivated by Plaintiff's exercise of constitutionally protected conduct. Indeed, the timeline of events suggests otherwise. Prior to Plaintiff criticizing Defendant Stroughter in the media, hiring an attorney, and filing suit in this case, Defendant Stroughter had already relieved Plaintiff of his coaching duties and informed him that she was going to take the basketball program in a different direction in light of some negative things she had heard about the program and about Plaintiff. Dkt. No. 10, p. 9-10 (Pg. ID 112-13). These negative findings are detailed in Defendant Stroughter's affidavit. *See* Dkt. No. 14-7. Therefore, even though Defendant Stroughter later extended Plaintiff an interview, it was clear that the decision to not bring him back as head coach was made prior to Plaintiff engaging in any alleged constitutionally protected conduct.

Moreover, Plaintiff offers no evidence to support his claims of retaliation. First, Plaintiff alleges that Defendant Dr. Nikolai Vitti (School Superintendent) wrote an email to the school board on September 25, 2018 suggesting that Plaintiff, under no circumstances, would be brought back as head coach due to his public comments about Defendant Stroughter. Dkt. No. 10, p. 21 (Pg. ID 124). However, that email makes no such suggestion. *See* Dkt. No. 14-10. Instead, the email says

the new principal "made a decision to move in a different direction regarding her varsity boys and girls basketball coaches." *Id.* at p. 3 (Pg. ID 387).

Second, Plaintiff alleges Defendants put out a press release on September 26, 2018 stating Plaintiff would not be considered for the coaching position because of his public comments about Defendant Strougter. Dkt. No. 10, p. 22 (Pg. ID 125). But again, Plaintiff misconstrues Defendants' statements. Indeed, that press release states, "We will continue to actively seek a new boys varsity basketball coach at Renaissance who is aligned with Principal Strougter's, and the District's, vision of excellence." Dkt. No. 10-5, p. 2 (Pg. ID 152). Nothing in the press release suggests Plaintiff was being punished for speaking out. *See id.*

Finally, Plaintiff alleges that a school board member told a close associate of Plaintiff's attorney that Defendant Vitti was furious that Plaintiff would sue Defendants and still expect to be considered for the coaching position. Dkt. No. 10, p. 23 (Pg. ID 126). Yet, Plaintiff offers no proof of this communication.

In sum, nothing in the record suggests Plaintiff was being punished for exercising constitutionally protected conduct. Accordingly, Plaintiff has failed to carry his burden of demonstrating a likelihood of success on the merits of his First Amendment retaliation claim.

### B. The Remaining Preliminary Injunction Factors are not Enough to Overcome Plaintiff's Failure to Demonstrate a Likelihood of Success on the Merits of His Claims.

1. <u>Plaintiff has not demonstrated an irreparable injury.</u>

Plaintiff rests his claim of an irreparable injury solely on the alleged violations of his constitutional rights. Dkt. No. 10, pp. 27-28 (Pg. ID 130-31). But as discussed above, Plaintiff has not carried his burden of demonstrating such violations. Accordingly, this factor weighs against issuing a preliminary injunction.

2. <u>A lack of harm to others is not outcome determinative.</u>

Plaintiff claims there is no evidence that issuing an injunction in this case would cause any harm to others. *Id.* at pp. 28-29 (Pg. ID 131-32). In contrast, Defendants argue that an injunction would harm Defendant Stroughter's ability to select a coach that is aligned with her vision and values and that ensures she is able to fulfill her responsibility to students, staff, and the community to educate and empower. Dkt. No. 14, p. 29 (Pg. ID 246). But whether issuing an injunction would cause harm or not, this factor alone is not enough to overcome Plaintiff's failure to demonstrate a likelihood of success on the merits of his claims. *See Gonzales*, 225 F.3d at 625 (a finding that there is simply no likelihood of success on the merits is usually fatal).

3. <u>Plaintiff has not demonstrated that issuing an injunction would be in the public's interest.</u>

Plaintiff finally asserts that issuing an injunction would be in the public's interest because it is always in the public interest to prevent a violation of a party's constitutional rights. Dkt. No. 10, p. 29 (Pg. ID 132). However, Plaintiff has not carried his burden of demonstrating a violation of his constitutional rights. Alternatively, Plaintiff asserts that issuing an injunction would protect the interests of the student-athletes at Detroit Renaissance High School. *Id.* But Plaintiff fails to explain why it would be in the student-athletes' best interests. Indeed, the student-athletes can still play basketball this season whether or not Plaintiff is the head coach. Therefore, this final factor does not weigh in favor of issuing a preliminary injunction.

### V. CONCLUSION

For the reasons stated on the record and discussed herein, the Court will DENY Plaintiff's Amended Motion for Preliminary Injunction [#10].

IT IS SO ORDERED.

Dated: October 23, 2018

s/Gershwin A. Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, October 23, 2018, by electronic and/or ordinary mail.

                                           s/Teresa McGovern
                                           Case Manager